UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JANE DOE 5 | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Cause No: |
| vs. | ) | |
| | ) | |
| | ) | |
| SOUTHERN ILLINOIS UNIVERSITY, | ) | |
| d/b/a SOUTHERN ILLINOIS | ) | |
| UNIVERSITY AT CARBONDALE, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
|  Serve: Dr. J. Kevin Dorsey, President | ) | |
|     1400 Douglas Drive | ) | |
|     Carbondale, IL  62901 | ) | |
| | ) | |
| DR. KAREN RENZAGLIA, | ) | |
| | ) | |
| Serve at:  47 Ramblin Rose Lane | ) | |
|     Makanda, IL  62958 | ) | |
| | ) | |
| And, | ) | |
| | ) | |
| NICHOLAS DAVID FLOWERS, | ) | |
| | ) | |
| Serve at: 36 Palm Lane | ) | |
|     Murphysboro, IL 62966 | ) | |
| | ) | |
|     Defendants. | ) | |

**COMPLAINT**

COMES NOW the Plaintiff, Jane Doe 5, by and through her attorney, Nicole Gorovsky

of Gorovsky Law, LLC, and for her Complaint against Defendant, The Board of Trustees of

Southern Illinois University ("SIU"), d/b/a Southern Illinois University at Carbondale

("SIUC"), states as follows:

**JURISDICTION AND VENUE**

1.   Jurisdiction lies under 28 U.S.C. §1331 and § 1343(a)(4) in as much as this complaint presents a federal question.

2.   Plaintiff brings this action in part pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. §1681) which is an act of Congress providing for protection of civil rights.

3.   Venue in the Southern District of Illinois is appropriate because the occurrences complained of took place in Jackson County, Illinois, and the Defendants reside within the Southern District of Illinois. 28 U.S.C. §1391.

**PARTIES**

4.   Plaintiff, Jane Doe 5 is an adult female and was at all times relevant to this complaint an employee of Southern Illinois University in Carbondale, Illinois.

5.   Plaintiff earned a Bachelor of Arts in Plant Biology with Honors and a Minor in Chemistry from Southern Illinois University Carbondale in May 2000.  Plaintiff earned a Ph.D. in Plant Cellular and Molecular Biology from Ohio State University in 2007. Plaintiff is an accomplished scientist, a recipient of competitive federal funding awards and fellowships from the National Science Foundation for excellence in research and has authored or co-authored a multitude of research papers. Plaintiff began working for Defendant University under the supervision of Defendant Professor Karen Renzaglia in May 2016.

6.   Defendant, Southern Illinois University is a public university, administered by, and conducting its business in the State of Illinois, with business offices in Carbondale, Illinois. Defendant has historically been the largest of the campuses of the Southern Illinois University system. The Defendant enrolls students from all 50 states as well as more than 100 countries. Upon information and belief, Defendant University has more than 50 employees.

7.   Defendant University is an "employer" as defined by Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e.

8.   Defendant Nicholas David Flowers was a student at Southern Illinois University at Carbondale at all times relevant in this lawsuit and has a permanent address in Murphysboro, Illinois.

9.   Defendant Dr. Karen Renzaglia was a professor and/or professor emeritus of Plant Biology at Defendant University at all times relevant in this lawsuit. Professor Renzaglia is a resident of Makanda, Illinois.

## FACTS APPLICABLE TO ALL COUNTS

10. Defendant SIUC, through its employees, agents and servants, had the authority and responsibility to address discrimination and harassment (sexual or otherwise) and to institute corrective measures, and had actual or constructive knowledge of harassment and discrimination in the school's programs, and, despite such knowledge, failed to adequately respond to stop the harassment and discrimination against the plaintiff and took affirmative steps which resulted directly in severe sexual harassment and assaults of the Plaintiff.

11. Defendant SIUC was responsible for promulgation and enforcement of all policies, customs and practices within the university.

12. Defendant, SIUC, is an educational institution as defined by 20 U.S.C.A. § 1681(c), Title IX, Education Amendments of 1972 (hereinafter "Title IX") which receives federal financial assistance.

13. Defendant SIUC has a known history of failing to sufficiently investigate and handle sexual assault and harassment involving university students and employees thereby leading to a hostile environment at the university.

14. Defendant University has had multiple Department of Education Investigations. In fact, during the relevant instances in this matter, Defendant SIUC was required by the United States

Department of Education to demonstrate gender equality in compliance with Title IX

15. Plaintiff, Jane Doe 5 was an employee at Southern Illinois University at Carbondale in the Plant Biology Department from in May 2016 through May 2018. Her title was Research and Education Specialist.

16. In general, Plaintiff was responsible for recruiting, training, mentoring students, performing research and grant writing in the Southern Illinois Bridges to Baccalaureate Program. Multiple administrative duties were associated with this job. Doe also taught and mentored part-time in other university programs.

17. During her employment with Defendant University, Plaintiff performed her job to the best of her ability and met the legitimate job expectations of Defendant University.

18. In November 2017, Defendant Renzaglia, Plaintiff's supervisor, wrote a very positive review of Plaintiffs' work.

19. At all times relevant herein, Defendant Renzaglia was employed by Defendant University, acted directly in the interests of Defendant University and acted within the course and scope of her employment and agency with Defendant University.

20. At all relevant times Plaintiff reported to Defendant Renzaglia in her employment.

21. During 2016-2018, Plaintiff suffered extraordinary and severe harm due to the sexual physical and emotional assaults committed upon her by Defendant Nicholas Flowers and the sexually hostile environment at SIUC University that was created by defendant SIUC, which the defendants failed to correct and to properly address despite their actual knowledge thereof and due to the negligence outlined below.

22. Defendant Nicholas Flowers was a graduate student at Defendant University in the Plant Biology Department at Defendant University. Accordingly, he attended Defendant University at all times relevant in this lawsuit. Defendant Flowers was at all times relevant to

Plaintiff's Complaint, a resident and citizen of the State of Illinois, employed by Defendant University as a graduate teaching and research assistant. At all times relevant herein, Defendant Flowers was employed by Defendant University and Defendant Renzaglia was his supervisor.

acted directly in the interests of Defendant and acted within the course and scope of his employment and agency with Defendant University.

23. Defendant Flowers also reported to Defendant Renzaglia.

24. While attending SIUC, Defendant Nicholas Flowers sexually assaulted, harassed and abused several women, including Plaintiff.

25. Such actions by Defendant Flowers were in violation of Defendant University's Student Code of Conduct regarding sexual harassment and assault.

26. Defendant University failed to take appropriate actions to protect Plaintiff against sexual harassment at SIUC, despite having actual notice of the past lewd and/or inappropriate conduct, of Defendant Flowers, all in violation of Title IX, and in violation of the rights guaranteed to Plaintiff by the United States and Illinois Constitutions, Statutes, laws, and regulations.

27. Defendant University, acted individually and through its employees and agents, all of whom acted with actual or apparent authority and all of whom aided in carrying out and/or permitting the sexual harassment and assaults of the Plaintiff by the actions and inactions of defendants.

28. SIUC, acting through its administrators, and other employees and agents, knew about the specific misconduct and sexual harassing conduct committed by Defendant Flowers and was deliberately indifferent to this conduct, as demonstrated by the specific failures described below, thereby exposing and continuing to expose the educational environment in general, and Plaintiff in particular, to a sexually hostile educational environment.

29. Alternatively, Defendant SIUC should have been aware of the misconduct and sexual

harassment committed by Defendant Flowers, for which Plaintiff asserts claims pursuant to the Law Against Discrimination ("LAD") and civil rights violations, pursuant to 42 U.S.C.A. § 1983 and Title IX violations.

30. Defendants, through their actions and inactions described herein, and through a pattern of deliberate indifference created and permitted a severe, pervasive, and persistent sexually hostile educational environment, in violation of Title IX of the Education Amendments of 1972.

31. Upon information and belief, Defendant University personnel were aware of Defendant Flowers' behavior as his prior victims were also Defendant University students and/or employees and University personnel witnessed Defendant Flowers' behavior.

32. Additionally, upon information and belief, the environment in the Plant Biology Department and at SIUC (and the SIU system) in general was such that women were aware that they would face retaliation if they officially reported abuse.

33. Before Defendant Flowers sexually and physically assaulted Plaintiff, he had the following red flags in his behavior:

   a. Defendant Flowers gave one Defendant University student homemade "moonshine" in his car and she quickly blacked out (fearing that she had been drugged). This student stated that she did not report the incident because of fear of the SIUC environment.

   b. A Defendant SIUC student of the Plant Biology Department reported that Flowers had episodes of "rage," where he would break property and then turn his violence to her. This employee knows that at least one other employee of the Defendant SIUC Plant Biology Department witnessed Flowers' aggression toward her.

   c. A Defendant SIUC student dated Defendant Flowers while she was at SIUC, and one day she woke up to him having unwanted sex with her.

   d. Flowers' ex-wife detailed that Flowers had fits of rage and depression, and that he had an addiction to pornography, masturbation and cocaine.

34. SIUC Professor Karen Renzaglia of the Plant Biology Department was very close to

Defendant Flowers and co-authored scholarly articles with him, and even shared an office with him at times.

35.  Upon information and belief, Defendant Renzaglia knew of Defendant Flowers' dangerous tendencies.

36. Despite this knowledge, Defendant Renzaglia, while working for Defendant University as Plaintiff's supervisor, pressured Plaintiff into a entering a romantic relationship with Defendant Flowers.

37. Upon information and belief, Defendant Renzaglia knew that Defendant Flowers was emotionally, physically and sexually manipulative and abusive. However, she continued to encourage the pair to become romantically involved:

    a.  In June 2016, Defendant Renzaglia told Plaintiff that Defendant Flowers' feelings were hurt because Plaintiff had not invited him to a small gathering at her house. Plaintiff told Defendant Renzaglia that the party was for people directly working with Plaintiff, and Defendant Flowers was not working with Plaintiff. Defendant Renzaglia, as Plaintiff's supervisor, told Plaintiff to apologize and invite Defendant Flowers to future social activities;

    b.  Defendant Renzaglia told Plaintiff that she thinks of Defendant Flowers as a son and that he is one of her favorite people;

    c.  Defendant Renzaglia also hung photos of Defendant Flowers in the laboratory;

    d.  Defendant Renzaglia pressured Plaintiff to invite Defendant Flowers to her home, and to other social activities;

    e.  Defendant Renzaglia repeatedly told Plaintiff how wonderful and handsome Defendant Flowers was to the point that Plaintiff understood that Defendant Renzaglia wanted them to date;

    f.  Defendant Renzaglia regularly asked Plaintiff if she was dating Defendant Flowers with the tone and inflection to make the point that the pairing was her goal; and

    g.  Upon information and belief, Defendant Renzaglia was pressuring Defendant Flowers, the abusive student, to pursue Plaintiff as well, and he started seeking Plaintiff out romantically in August of 2016.

38. Plaintiff resisted Defendant Flowers' advances for a month.

39. Then, in September 2016, both Plaintiff and Defendant Flowers attended a social gathering at a professor's home. Defendant Flowers asked her to go listen to a band following the gathering and Plaintiff relented.

40. Plaintiff woke up the next morning in Defendant Flowers's bed without her clothing and was aware that she had been drugged and sexually assaulted. As she awoke, Plaintiff tried to get away from Defendant Flowers. Defendant Flowers then told her that while she was blacked out, they had "lots of sex."

41. Plaintiff was afraid and confused about what had happened. She had been raped by the man that her employer thought was wonderful, handsome and perfect for her. Unsure of what to do, her fear won out and she did not report the sexual assault.

42. Following the rape, Defendant Flowers kept pursuing Plaintiff and Defendant Renzaglia continued encouraging a romantic relationship between the two.

43. Plaintiff continued attending social events with Defendant Flowers due to the pressure from her employer Professor Renzaglia. Defendant Flowers continued to harm her physically, emotionally and sexually.

44. On numerous occasions, Plaintiff told Defendant Flowers that he was hurting her.

45. Defendant Flowers did not cease his conduct.

46. Two months after Defendant Flowers raped Plaintiff the first time, in December 2017, Defendant Renzaglia told Plaintiff that she had fired the two previous employees in Plaintiff's position and that she gave them both very negative professional reviews to prospective employers, thereby implying to Plaintiff that her position was unstable.

47. Defendant Renzaglia further told Plaintiff that she had knowledge that Defendant Flowers was violent with women and asked Plaintiff if Defendant Flowers had been violent with her.

48. Afraid of retribution and retaliation from her employer, and dependent on Defendant SIUC for her livelihood, Plaintiff did not reveal the violence that she was enduring.

49. In February 2018, Defendant Renzaglia got into an argument with Defendant Flowers and Defendant Renzaglia kicked Defendant Flowers out of her office.

50. Plaintiff saw the falling out as her opportunity to escape the abusive situation she was in with Defendant Flowers without reprisal from her employer (Defendant Renzaglia and Defendant University). She told Defendant Flowers that night that she never wanted to see him again.

51. Plaintiff reported to Defendant Renzaglia what Defendant Flowers had done to her on March 25, 2018.

52. Instead of reporting the complaint to the Title IX office of Defendant University, as she was required to do, or offering support, Defendant Renzaglia repeatedly asked Plaintiff if she had said "no" and if it was just "rough sex".

53. Despite being a mandatory reporter of sexual violence at Defendant University who recently completed sexual violence training, Defendant Renzaglia did not report Plaintiff's sexual assault complaint until April 20, 2018, which was just after Plaintiff told Defendant Renzaglia that Plaintiff was planning to report Flowers to the police.

54. Plaintiff reported to the Carbondale Police Department on April 24, 2018, that Defendant Flowers had sexually and physically assaulted her multiple times from 2016 to 2018. She detailed an incident of waking up in January 2018 to Flowers pulling her legs apart and pulling at her skin. She told him that he was hurting her and told him to stop, but he refused. He

then forcefully penetrated her vagina with his penis while violently shoving her legs over her head.

55. She further reported, that in January 2018, she awoke to Flowers standing over her smiling. He then digitally penetrated her causing pain while she told him to stop.

56. In yet another incident, Defendant Flowers started to give Plaintiff a gentle back massage but then started pushing so hard she was in pain. She begged him to stop and cried as he continued to hurt her this way for over 10 minutes.

57. After Plaintiff reported the abuse to Defendant Renzaglia, the University and Renzaglia failed to provide accommodations to Plaintiff as is required by Title IX and retaliated against Plaintiff for reporting Flowers' behavior.

58. Following the report, Defendant Renzaglia repeatedly questioned Plaintiff asking for details of her abuse and failed to keep the issue confidential such that Plaintiff could hear her co-workers discussing her abuse while she was at work.

62. Defendant Renzaglia sent Doe retaliatory emails that said:

a. I think ending ties with SIU and SI Bridges is best.  This has been extremely hard on everyone, including me.  I would like to move on when your contract ends June 1

b. My impression of you as a professional is severely damaged. The poor interactions with me and others in plant biology seemed unnecessary and your downfall feels self-inflicted.

c. I am deeply concerned about your stamina and ability to thrive in academics.

d. For me to see you and your departure differently will require you making an effort to inform me. As it is, I am left with a mess because of your actions and/or lack thereof.

e. I am saddened by the way your time here has ended. I was hoping for a happy goodbye and big celebration. You did great work when you were yourself.

63. Defendant Renzaglia discussed Plaintiff's complaints about Defendant Flowers with coworkers who did not have a business reason to know the confidential information. Defendant

Renzaglia did this despite Plaintiff asking her not to.

64.    Defendant Renzaglia told campus staff that Defendant Flowers was part of her professional family.

65.    Defendant Renzaglia also discussed/opined with others as to Plaintiff's mental health as a result of Defendant Flowers' conduct. Defendant Renzaglia did this despite Plaintiff asking her not to.

66.    Defendant Renzaglia persistently questioned Plaintiff for details of the rape, for information about other victims of Defendant Flowers, and police action. Defendant Renzaglia was not responsible for investigating the matter. She was simply prying and retaliating against Plaintiff and gathering information to assist her friend Defendant Flowers.

67.    After Plaintiff reported Defendant Flowers' conduct, Defendant University, including Defendant Renzaglia, failed to provide a safe workplace by prohibiting Defendant Flowers' presence on campus.

68.    Plaintiff repeatedly told her department chair, Sara Baer, and Defendant Renzaglia that she felt unsafe on campus.

69.    Plaintiff further reported to the Department Chair that Defendant Renzaglia had been harassing her and asking her inappropriate questions.

70.    The Department Chair did not take actions to provide safety to Plaintiff. Specifically, Defendant Flowers was allowed to maintain a key to Plaintiff's workplace following her report of the assaults.

71.    Plaintiff then reported to the police that Defendant Renzaglia was harassing her About Defendant Flowers. She further told them that she hadn't reported Defendant Flowers earlier because she feared for her continued employment and feared the retaliation that had now come to fruition.

11

72.   The police contacted the Chairperson of the Plant Biology Department and told her of Plaintiff's concerns. The Chairperson told the police that she was aware of the problem and that she would speak to Defendant Renzaglia. Things did not improve.

73.   Plaintiff twice reported Defendant Renzaglia's harassment to Chair Baer without improvement.

74.   Eventually, the retaliation and fear for her safety became too much for Plaintiff to bear and she requested FMLA leave from her employment with Defendant Renzaglia and Defendant University.

75.   Defendant Renzaglia tried to coerce Plaintiff into not exercising her rights to take leave under the Family Medical Leave Act.

76.   When Plaintiff informed Defendant Renzaglia that she felt she had to take FMLA leave due to the sexual assaults and environment following the abuse by Flowers Defendant Renzaglia burst out crying and then criticized Plaintiff in person and in front of other staff. Defendant Renzaglia said that she was conflicted because she had positive memories of Defendant Flowers. Defendant Renzaglia continued by saying that Plaintiff was ruining her career and that Plaintiff needed to be stronger. Defendant Renzaglia probed Plaintiff about the police investigation, asking if Defendant Flowers had been arrested, about other victims, and the involvement of a minor, Defendant Flowers' daughter. Defendant Renzaglia then accused Plaintiff of not performing her job and told Plaintiff she was overpaid. She had never said any of these negative things to Plaintiff about her performance before Plaintiff reported Defendant Flowers for sexually assaulting her.

77.   Defendant Renzaglia continued to berate Plaintiff in a narcistic rant saying that she had "saved" and "rescued" Plaintiff, and that Plaintiff was nothing without her. Defendant Renzaglia said Plaintiff owed her everything and that Plaintiff was selfish for not giving her more. Defendant

Renzaglia began to plead to Plaintiff "What have you given me? What do I get?". This is was all because Plaintiff reported that she needed medical leave to deal with sexual assault.

78.   Plaintiff began a leave of absence on May 10, 2018.

79.   Following her leave, Plaintiff's employment was constructively discharged on June 1, 2018.

80.   Defendant SIUC created an environment where multiple women were victimized and felt they could not report what happened to them to the University for fear of retaliation.

81.   Plaintiff reported her victimization where victims before her could not but it resulted in the negative consequences that those before her had feared. She was not protected, she was harassed, and she was not in any way accommodated.

82.   Eventually the fear for her safety, the whisperings of her co-workers and the repeated questioning from Defendant Renzaglia led Plaintiff to take leave under the Family and Medical Leave Act. Her leave began on May 10, 2018. She lost the livelihood she so feared losing.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES WITH REGARD TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E

83.   Portions of Plaintiff's cause of action are filed against Defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

84.   Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant University within 300 days of the unlawful employment practices complained of herein such that this action is timely and properly filed.

85.   A true and accurate copy of Plaintiff's Charge of Discrimination is available upon request.

86.   Plaintiff's charge of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this

judicial petition may be and is as broad as the scope of the investigation that could reasonably be expected to have grown out of the charge of discrimination.

87.   Plaintiff received a Notice of Right to Sue from the EEOC on or about June 4, 2019, and this action is timely filed within 90 days from the receipt of that Notice.

88.   A true and accurate copy of the Notice of Right to Sue from the EEOC is available upon request.

89.   Plaintiff timely complied with all administrative prerequisites prior to filing this lawsuit.

90.   Plaintiff has satisfied and exhausted all private, administrative, and judicial prerequisites to the institution of this action.

## <u>COUNT I</u>

**VIOLATIONS PURSUANT TO 20 U.S.C.A. § 1681(C), TITLE IX, EDUCATION AMENDMENTS OF 1972**
**(Against Defendant University and Defendant Renzaglia)**

91.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

92.   Plaintiff asserts that Defendant University and Defendant Renzaglia violated the requirements of Title IX by the following acts and omissions, all of which were conducted and/or failed to be conducted, in reckless and deliberate indifference to the rights of Plaintiff guaranteed by Title IX and in reckless and deliberate indifference to the risk of harm posed to Plaintiff:

   a.   affirmatively recruiting, accepting and/or permitting the continued enrollment and involvement in university activities by Defendant Flowers at a time when this defendant knew that he was dangerous to women;

   b.   discouraging students from reporting sexual assaults and harassment committed by other students at Defendant University;

   c.   actively disregarding known sexual harassment committed in the past by Defendant Flowers of which defendants were aware;

d.  failing to take immediate and appropriate corrective actions to remedy the known harassment by Defendant Flowers in the past at SIUC;

e.  failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment and sex discrimination complaints in violation of Title IX;

f.  failing to disseminate and enforce an appropriate policy against sexual harassment;

g.  failing to conduct a reasonably diligent inquiry regarding Defendant Flower's past sexually harassing conduct;

h.  completely failing to supervise Defendant Flowers when Defendants knew of his past inappropriate behavior;

i.  ratifying and accepting the past inappropriate actions of Defendant Flowers;

j.  failing to have in place a "zero tolerance" policy for sexual harassment at Defendant University;

k.  failing to give adequate training to staff members on Title IX requirements to protect against sexual harassment;

l.  improperly investigating allegations of sexual violation(s) alleged to have been committed in the past by Defendant Flowers;

m.  creating, through inaction and through affirmative acts described herein, a sexually hostile educational environment in which allegations of sexual harassment and misconduct are not handled appropriately, thus exposing female students to the risks of assault and sexually harassing conduct; and

n.  Retaliating against Plaintiff for reporting her sexual harassment.

93.  Defendants' actions altered the conditions of Plaintiff's work environment, denying her accommodations, advantages, facilities, and/or privileges associated with her time at SIUC and in retaliating against her for reporting which resulted in her having to leave her employment.

94.  Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

## <u>COUNT II</u>

**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C.A. § 1983
SUBSTANTIVE DUE PROCESS, STATE CREATED DANGER CLAIMS
(Against Defendant University and Renzaglia)**

95.   Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs as though fully set forth herein.

96.   Defendant University acted under color of state law when it engaged in the conduct

described in this Complaint. Plaintiff's harm was foreseeable and a direct result of these

defendants' actions, as described in detail above, because defendants had actual knowledge and/or

awareness of the risk of inappropriate sexual conduct committed in the past by Defendant

Flowers, such that these Defendants were on notice that acting in the ways described above,

would place plaintiff in direct harm due to sexual harassing conduct by Flowers.

97.   Plaintiff, a female employee at Defendant University, was a foreseeable victim of

the danger created by these defendants and these defendants' actions and conduct were not

directed to the public at large.

98.   These Defendants used their authority in a way that created danger to Plaintiff and/or

rendered her more vulnerable to danger and harm by affirmatively permitting Defendant Flowers

to attend classes, enter the laboratory, and be around Plaintiff without any oversight, supervision

or restrictions despite these defendants' knowledge of the risk of harm to females and Plaintiff and

for all other reasons outlined herein.

99.   The defendants affirmatively created the opportunity for sexual assaults to occur

through their affirmative actions.

100.   For the reasons outlined herein, these Defendants acted with deliberate indifference

and conscious disregard to a known risk of sexual harassment and/or sexual misconduct by

Defendant Flowers such that the actions and failures of these defendants are conscience shocking.

Defendants acted with a willingness to ignore the known danger presented by Defendant Flowers.

101.   These Defendants' actions created the danger of ongoing sexual harassment and assaults of females; rendered Plaintiff substantially more vulnerable than had Defendants not acted at all; and/or increased the risk of harm to Plaintiff.

102.   These Defendants' actions described herein affirmatively exposed Plaintiff to the harm and danger presented by Defendant Flowers.

103.   Plaintiff states a claim against Defendants for violation of her civil rights pursuant to 42 U.S.C.A. § 1983, specifically for the substantive due process violation of Plaintiff's right to bodily integrity without state interference based upon the state's actions and for creating a danger.

104.   Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

## <u>COUNT III</u>

### CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C.A. § 1983
### *MONELL* FAILURE TO TRAIN & SUPERVISE CLAIMS
### (Against Defendant University)

105.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

106.   Defendant University failed to train and supervise its staff members in appropriate reporting and handling of sexual misconduct allegations.

107.   Defendant University also failed to properly supervise Defendant Flowers and Defendant Renzaglia.

108.   As such, these defendants were deliberately indifferent and reckless with respect to the violation of plaintiff's constitutional rights.

109.   These defendants' failures were the moving force behind the actions of Defendant Flowers resulting in plaintiff's injuries and damages, described above.

110. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

## COUNT IV

### SEXUAL HARASSMENT UNDER TITLE VII
**(Against Defendant University)**

111. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

112. Plaintiff was subjected to unwelcome sexually offensive and explicit comments during the term of her employment with Defendant University.

113. The unwelcome sexually offensive and explicit comments that Plaintiff endured was perpetrated against Plaintiff by Defendant University's employees.

114. Plaintiff reported the unwelcome sexually offensive and explicit comments of a sexual nature to members of management and to human resources.

115. Defendant University failed to take any remedial action to address Plaintiff's complaints.

116. The foregoing conduct of Defendant University, through its agents and employees, constitutes sexual harassment against Plaintiff and created a hostile employment environment for Plaintiff.

117. Defendant University knew or should have known of the sexual harassment and failed to implement prompt and appropriate remedial action.

118. Defendant University maintained inadequate written policies, procedures, or guidelines with respect to discrimination and sexual harassment.

119. Plaintiff was damaged by the above-mentioned discrimination and is entitled to all remedies available to her as provided in Title VII, including but not limited to damages for loss of income, embarrassment, humiliation, emotional distress, damage to her reputation, diminution in

earnings capacity, and other damages as yet undetermined, and Plaintiff is reasonably expected to suffer from such damages in the future.

120.   Defendant University's conduct constitutes intentional sexual harassment, with malice, and/or reckless disregard of Doe's known rights.

121.   Defendant's conduct was outrageous because of Defendant's evil motive or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount that will punish Defendant and will deter Defendant and others from like conduct.

## COUNT V

### RETALIATION UNDER TITLE VII
### (Against Defendant University)

122.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

123.   Prior to her constructive discharge, Plaintiff complained to Defendant University about discriminatory conduct.

124.   At the time of Plaintiff's discharge, Defendant University was aware of Plaintiff's complaints, and was aware she had opposed sexual harassment.

125.   Defendant University retaliated against Plaintiff for reporting discriminatory conduct.

126.   Defendant University's conduct toward Plaintiff adversely effected numerous terms and conditions of Plaintiff's employment and rendered Plaintiff's working environment so hostile that no reasonable person would be able to work under said conditions.

127.   Plaintiff engaged in activity protected by Title VII by complaining of sexual harassment and assault in March 2018.

128.   Plaintiff's protected activities were a motivating factor(s) in Defendant University's adverse employment decisions and conduct.

129.   Defendant University's conduct was outrageous and showed complete indifference

19

to or conscious disregard for Plaintiff's rights.

130.    As a result of Defendant University's conduct and the actions alleged herein, Plaintiff has suffered emotional distress and mental anguish.

131.    As a result of Defendant University's unlawful employment practices, Plaintiff has been damaged in the form of lost wages and benefits of employment, future wages, and diminished employment status.

132.    As a result of Defendant University's conduct and the actions alleged herein, Plaintiff has incurred attorneys' fees and costs of litigation.

133.    Defendant University's conduct was outrageous because of its evil motive or reckless disregard to Plaintiff's right not to be discriminated against. Defendant University's conduct warrants the imposition of punitive damages.

## COUNT VI

### NEGLIGENCE & NEGLIGENT SUPERVISION
**(Against Defendant University)**

134.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

135.    Defendant University, though its employees, agents and servants, had the authority and responsibility to supervise students and employees.

136.    Defendant University was responsible for promulgation and enforcement of all policies, customs and practices within the university.

137.    Defendant University knew and/or had reason to know that Defendant Flowers posed a risk to females, yet was negligent in his supervision, leading to Plaintiff's damages.

138.    Defendant University failed to take appropriate actions to protect Plaintiff against the assaults of Defendant Flowers despite having actual notice of the past lewd and/or inappropriate conduct, all in violation of its own policies.

139.    Plaintiff asserts that the Defendant University, acted negligently, including but not

20

limited to:

    a.   negligence in supervising Defendant Flowers, and Plaintiff;

    b.   recruiting, accepting and/or permitting the continued enrollment and involvement in student activities by Defendant Flowers at a time when Defendant University knew that he was violent;

    c.   failing to have policies and procedures in place and/or failing to have adequate policies and procedures in place for the supervision of students;

    d.   failing to adopt and/or enforce appropriate rules for the supervision of its students who were "at risk", including Defendant Flowers, given his history of inappropriate conduct; and

    e.   failing to take appropriate steps to supervise Defendant Flowers;

140.   Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

<u>**COUNT VII**</u>

**ASSAULT & BATTERY**
**(Against Defendant Flowers)**

141.   Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

142.   Defendant Flowers sexually and physically assaulted Plaintiff, for which claims of assault are brought.

143.   Defendant Flowers performed sexual acts and sexual harassment acts upon Plaintiff without her consent and at a time when she did not consent.

144.   Defendant Flowers unlawfully touched Plaintiff without her consent for which claims for battery are brought.

145.   Plaintiff has suffered emotional distress and psychological damage, and her

character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

**WHEREFORE**, Plaintiff respectfully requests judgment in her favor and against Defendants, as follows:

A. Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances;

B. Punitive damages;

C. Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D. Statutory interest;

E. Costs; and

F. Reasonable attorney fees.

## JURY DEMAND

Plaintiff, by and through her attorneys, Gorovsky Law, LLC demands a trial by jury.

Respectfully submitted,


*/s/ Nicole E. Gorovsky*
Nicole Gorovsky, MO Bar #51046,
IL Bar #6307588
GOROVSKY LAW, LLC
222 S. Meramec Avenue, Suite 202
St. Louis, Missouri 63105

Phone: (314) 272-3255
Fax:     (314) 787-6101
Nicole@Gorovskylaw.com

**ATTORNEY FOR PLAINTIFF**